### IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA
### (PHILADELPHIA)

| | | |
|---|---|---|
| IN RE: | ) | |
| **MARTHA J CREDILLE,** | ) | **CASE NO.: 25-11078-DJB** |
| | ) | **CHAPTER 13** |
| DEBTOR. | ) | **JUDGE DEREK J. BAKER** |
| | ) | |
| **METROPOLITAN LIFE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| CREDITOR. | ) | |
| | ) | |
| **MARTHA J CREDILLE, DEBTOR,** | ) | |
| **FRED W CREDILLE, CO-DEBTOR, AND** | ) | |
| **KENNETH E. WEST, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

### MOTION OF METROPOLITAN LIFE INSURANCE COMPANY FOR RELIEF FROM AUTOMATIC STAY UNDER § 362 AND CO-DEBTOR STAY UNDER § 1301

1. Movant is Metropolitan Life Insurance Company

2. Debtor is the owner of the property described as 2107 Euclid Ave, Boothwyn, PA 19061 (hereinafter the "Property").

3. Movant is the holder of a Mortgage, with an original principal amount of $145,000.00 on the mortgaged premises, that was executed on November 8, 2006. Said mortgage was recorded on November 13, 2006, as Instrument No. 2006104798. Documentation provided is in support of right to seek a lift of stay and foreclose if necessary.

4. Kenneth E. West is the Trustee appointed by the Court.

5. As of December 16, 2025, Debtor has failed to make the monthly payments for the months of April 1, 2025 through December 1, 2025, in the amount of $1,112.60 each, for a total arrearage of $10,013.40.

6.  As of December 16, 2025, the principal balance is $116,800.94, the deferred principal

    balance is $1,921.55 and there is a total payoff amount of $176,597.06.

7.  Debtor's proposed Amended Plan dated October 27, 2025 accounts for payments to

    be paid direct to Movant by Debtor.

8.  In addition to the other amounts due to Movant reflected in this Motion, as of the date

    hereof, in connection with seeking the relief requested in this Motion, Movant will be

    incurring $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to

    seek an award or allowance of such fees and expenses in accordance with applicable

    loan documents and related agreements, the Bankruptcy Code and otherwise

    applicable law.

9.  Movant is entitled to relief from stay for cause.

10. Movant seeks relief from the "Co-Debtor Stay" as it may apply to the Co-Debtor on

    the Mortgage, Fred W Credille.  Given the foregoing, it is clear that unless the Co-

    Debtor stay is lifted, Movant's interest in the Property may be adversely impacted.

11. Movant further seeks relief in order to, at its option, offer, provide and enter into any

    potential forbearance agreement, loan modification, refinance agreement or other loan

    workout/loss mitigation agreement. Movant may contact Debtor via telephone or

    written correspondence to offer such an agreement. Any such agreement shall be non-

    recourse unless included in a reaffirmation agreement.

12. This motion and the averments contained therein do not constitute a waiver by

    Movant of its right to seek reimbursement of any amounts not included in this

    motion, including fees and costs, due under the terms of the mortgage and applicable

    law.

13. NewRez LLC d/b/a Shellpoint Mortgage Servicing services the underlying mortgage

    loan and note for the property referenced in this motion for Movant. In the event the

automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains

a discharge and a foreclosure action is commenced on the mortgaged property, the

foreclosure will be conducted in the name of Movant. Movant, directly or through an

agent, has possession of the Note. The Note is endorsed in blank. Movant is the

beneficiary or the assignee of the Deed of Trust.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and

permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and

to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the

mortgage premises. Further, Movant prays that an Order be entered awarding Movant the

costs of this suit, reasonable attorney's fees in accordance with the mortgage document and

current law together with interest.


Dated: December 18, 2025

Respectfully Submitted,

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Movant*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this <u>18</u>th day of <u> December  </u> 2025.

### *VIA U.S. MAIL*

*DEBTOR*
MARTHA J CREDILLE
2107 EUCLID AVENUE
UPPER CHICHESTER, PA 19061

*CO-DEBTOR*
FRED W CREDILLE
2107 EUCLID AVE
BOOTHWYN, PA 19061

### *VIA ELECTRONIC NOTICE*

*ATTORNEYS FOR DEBTOR*
BRAD J. SADEK
SADEK LAW OFFICES, LLC
1500 JFK BOULEVARD
STE 220
PHILADELPHIA, PA 19102
BRAD@SADEKLAW.COM

*TRUSTEE*
KENNETH E. WEST
OFFICE OF THE CHAPTER 13 STANDING TRUSTEE
190 N. INDEPENDENCE MALL WEST
SUITE 701
PHILADELPHIA, PA 19106
ECFEMAILS@PH13TRUSTEE.COM

_U.S. TRUSTEE_
UNITED STATES TRUSTEE
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET, SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
Josh.goldman@padgettlawgroup.com
_Counsel for Movant_

# Direct Installment Loan Disclosure and Note

**PNC BANK**

Date: 11/08/2006

**Borrower:** FRED W CREDILLE
MARTHA JANE CREDILLE

**Lender:** PNC Bank, Delaware

Items preceded by " ☐ " are not applicable unless marked "☒" or the equivalent.

## Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of the Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost the Borrower. | Amount Financed The amount of credit provided to the Borrower or on the Borrower's behalf. | Total of Payments The amount the Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 9.418 % | $ 177,356.00 | $ 145,000.00 | $ 322,356.00 |

The Borrower's **Payment Schedule** will be:                                                                                     e means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $ 1,343.15 | Monthly, beginning  12/12/2006 |
|  |  |  |
|  |  |  |

**Security:** Lender is getting a security interest in deposits or property held by Lender, and:

☐ None.  ☐ Goods or property being purchased.
☒ Real Estate.

In addition, collateral (other than Borrower's principal residence) securing other obligations to Lender may also secure this Note.

**Security Interest Charges:**

☐ None.  ☒ Filing Fees $ 62.00

**Variable Rate:** ☒ Not Applicable.
☐ This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

☐ If Borrower's participation in the automatic payment plan is discontinued for any reason, the Automatic Payment Plan Discount of __ percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Discount terminated after 12 payments, the payment amount would increase to $ __ for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)

☐ If Borrower ceases to be eligible for the Employee Benefit Discount in the interest rate, the interest rate on this loan will increase to a rate calculated by dividing the interest rate stated in this Note by 95%. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial interest rate of 9.5%, repayable in 48 monthly payments of $251.23, and the Employee Benefit Discount terminated after 12 payments, the payment amount would increase to $322.67 for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Late Charge:** ☐ Not Applicable.  ☒ If a payment is not made within 15 days of its due date, Borrower may be charged the greater of $29.00 or 10% of the total amount of the payment which was not paid in full.

**Prepayment:** If Borrower pays off early, Borrower ☐ may ☒ will not  have to pay a penalty.

**Required Deposit Balance:** ☒ Not Applicable. ☐ The Annual Percentage Rate does not take into account any required deposit balance.

**Assumption:** If this loan is secured by a dwelling, someone purchasing that dwelling cannot assume the remainder of the loan on the original terms.

### Itemization of Amount Financed

Amount Financed
$ See Settlement Statement
(1) Amount given directly to Borrower
$ See Settlement Statement
(2) Amount paid on Borrower's account
$ See Settlement Statement
(3) Amount retained by Lender for

$ See Settlement Statement
(4) Amount paid to others on Borrower's behalf:
(a) to public officials
$ See Settlement Statement
(b) for credit insurance
$
(c) to See Settlement Statement
$
(d) to
$
(e) to
$
(f) to
$
(g) to
$
(h) to
$
(i) to
$
Prepaid Finance Charge
$ See Settlement Statement
Itemization of Amounts paid by Borrower at the time the loan is made:
(1)
$ See Settlement Statement
(2)
$
(3)
$

---

**Credit Insurance Is Not Required. Borrower May Cancel Credit Insurance at Any Time Without Penalty.** Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless Borrower signs below and agrees to pay the additional cost(s). Insurance may be purchased on the life of one or two Borrowers. Credit Disability Insurance may be purchased on only one Borrower. If obtained through Lender the cost of the insurance for the original term of the credit is stated below. A portion of the cost may be retained by or paid to the Lender. "Borrower" who is insured may not be a Co-Maker.

I want Single Credit Life Insurance which costs $ _____

_____
Signature of Person to be insured for Single Credit Life Insurance

I want Single Credit Disability Insurance which costs $ _____

_____
Signature of Person to be insured for Single Credit Disability Insurance

We want Joint Credit Life Insurance which costs $ _____

1. _____     2. _____
Signatures of Persons to be insured for Joint Credit Life Insurance

Borrower does not desire or is not eligible for credit insurance: _____

_____
Signature of Borrower

Notice to Borrower(s): The maximum amount of coverage which insured Borrower(s) will receive is set forth in the certificate or policy, as applicable.
IF YOU HAVE SIGNED, ABOVE, STATING THAT YOU WANT CREDIT INSURANCE, THIS DOES NOT GUARANTEE YOU HAVE CREDIT INSURANCE. CREDIT INSURANCE MUST BE ELECTED USING A SEPARATE FORM. IF YOU CHOOSE TO ELECT INSURANCE COVERAGE A SEPARATE APPLICATION WILL BE PROVIDED TO YOU.

Copy

# Direct Installment Loan Disclosure and Note

**Borrower:** FRED W CREDILLE
MARTHA JANE CREDILLE

**Lender:** PNC Bank, Delaware

**Date:** 11/08/2006

---

## Direct Installment Loan Note

**1. Definitions.** In this Note, the word "Borrower" means each and all of those who sign this Note and each and all of those who endorse the check which disburses the "Amount given directly to Borrower."
The word "Lender" means PNC Bank, Delaware
or any person to whom this Note has been transferred.

**2. Borrower's Promise to Pay.** To repay this loan, Borrower promises to pay to Lender $ 145,000.00    , with interest on the unpaid balance from the date funds are advanced until paid in full. Interest shall be paid at the rate per annum of 9.420 %. Borrower promises to make payments in accordance with the payment schedule stated in this Note. Borrower promises to pay to Lender all other amounts which may become due under the terms of this Note, including, if applicable, Prepaid Finance Charges, Credit Insurance Premiums, Late Charges, Prepayment Fee and Costs of Collection. Borrower agrees to make payments at the place designated by Lender. Borrower may also be required to pay to Lender certain other charges before Lender will give any money to Borrower. These charges, if any, are stated on page one in "Itemization of Amounts paid by Borrower at the time the loan is made" and/or in the Settlement Statement.

**3. Prepaid Finance Charge.** [X] Not Applicable. [ ] Borrower agrees to pay a Prepaid Finance Charge. The amount of the Prepaid Finance Charge is stated on page one in the Itemization of Amount Financed. The Prepaid Finance Charge is fully earned on the date any of the proceeds of this loan are advanced. After that date, no portion of the Prepaid Finance Charge will be refunded to Borrower, even if the loan is prepaid in full or in part.

**4. Payment Schedule.** Borrower agrees to pay to Lender the amounts due under this Note:
[X] in uninterrupted monthly payments: 239 payments of $ 1,343.15    and a final payment, which will be billed by Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on  12/12/2006   .
Payments will continue until all amounts due are paid.
[ ] in uninterrupted monthly payments, except for the months shown:
    payments of $              and a final payment, which will be billed by the Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on              ,PROVIDED, HOWEVER, that no payments shall be due during the months of              , or
each year.
[ ] in a single payment of $              plus accrued interest and all other amounts due on              .
[ ] In addition, prior to the month of the first scheduled payment as stated above, interest shall be payable monthly on the unpaid balance and shall be due on the same day of the month as the later payments.
The date that the final payment is scheduled in this paragraph to be due is called the "Maturity Date" of this Note. If Borrower elects to purchase Credit Insurance and then elects to cancel the Credit Insurance, the Payment Schedule may change as described in the "Credit Insurance" paragraph.

**5. Automatic Payment Plan.** [X] Not Applicable. [ ] Borrower authorizes Lender to deduct the payments on this loan from Borrower's deposit account number              on each scheduled payment due date.

**6. Variable Interest Rate.**
**(a) Automatic Payment Plan.** [X] Not Applicable. [ ] The interest rate on this loan may increase by              percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if any Borrower chooses to terminate participation; (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on those payment dates.
**(b) Employee Benefit.** [X] Not Applicable. [ ] Borrower is receiving an Employee Benefit Discount in the interest rate on this loan, which is available to employees and retired employees of PNC Financial Services Group and its affiliates (certain executive officers, directors and principal shareholders are not eligible). If Borrower's eligibility for the Benefit ceases at any time during the term of this loan, the interest rate stated in the section of this Note called "Borrower's Promise to Pay" will increase to a rate calculated by dividing that rate by 95%.

**7. Monthly Payment Changes.** If the interest rate on this loan increases, the payment amounts may increase (but will not decrease). Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the new interest rate. If the payment amount will increase, Lender will notify Borrower of the effective date and amount of the new payment.

**8. Computing Interest.** Interest is charged on a daily basis, according to the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the annual interest rate in effect on that day divided by the number of days in that calendar year. Borrower agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge); early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**9. Application of Payments.** Lender will apply payments in the following order of priority: credit insurance premiums, if any, interest, late charges, fees, principal, and then Prepayment Fee, if applicable. All regular payments will be applied to the satisfaction of scheduled payments in the order in which they become due.

**10. Late Charge.** [ ] Not Applicable. [X] Borrower agrees that Lender may assess a late charge for any payment not paid in full within 15 days of its due date. The late charge will be the greater of $29.00 or 10% of the total amount of the payment which was not paid in full. No late charge will be due, however, if the reason that the payment is late is either: (a) attributable to a late charge assessed on a prior payment; or (b) because, after default by Borrower, the entire outstanding balance on this Note is due. No more than one late charge will be imposed for any single scheduled payment.

**11. Return Check Fee.** Borrower agrees that Lender may assess a fee of $30.00 if Borrower makes a payment with a check that is returned by the drawee for "not sufficient funds" in the account on which the check is written.

**12. Prepayment Fee.** [X] Not Applicable. [ ] If Borrower prepays the principal outstanding balance and all other amounts which Borrower has promised to pay (not including the Prepayment Fee) within three (3) years of the date of this Note, Lender may charge Borrower a Prepayment Fee of $              . If Lender charges a Prepayment Fee as authorized by this section, Lender may require the Prepayment Fee to be paid before the Loan is considered paid in full, and Lender may include the amount of the Prepayment Fee in response to a request by any person for a statement of the amount necessary to pay this loan in full (sometimes called a "payoff letter" or "payoff quote"). If Borrower prepays this loan in part, and is obligated to pay the remaining amounts due within three (3) years of the date of this Note, the Prepayment Fee will be due with and on the same date as the final payment of principal and interest.

**13. Waiver by Lender.** If Borrower has made or makes in the future another loan agreement with Lender, Lender might obtain a security interest in the principal dwelling of Borrower or someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of Borrower with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Note unless the security interest is specifically given to secure this Note.

**14. Interest After Maturity and Judgment.** Unless prohibited by applicable law, interest at the rate provided in this Note shall continue to accrue on the unpaid balance until paid in full, even after (whether by acceleration or otherwise) maturity, and/or if Borrower becomes a debtor in an action filed under the Bankruptcy Code and/or if judgment is entered against Borrower for the amounts due. If at any time interest as provided for in this paragraph is not permitted by law, interest shall, in that event and at that time, accrue at the highest rate allowed by applicable law.

**15. Default.** (As used in this paragraph, the term "Borrower" includes Borrowers, Co-Makers, Guarantors, sureties, and any owner of property which is security for this Note.) Borrower will be in default:
(a)  if Borrower does not make any payment before or on the date it is due; or
(b)  if Borrower fails to keep any promise made in this Note or defaults in any other note, loan or agreement with Lender; or
(c)  if anyone who signs the security agreement or a mortgage securing this Note breaks any promise made in the security agreement or mortgage; including but not limited to the promise not to sell, give away or transfer title to the property which is the subject of the mortgage or security interest; or
(d)  if any property in which Lender has obtained a security interest to secure this Note is lost, stolen (and not recovered within a reasonable time) or destroyed; or
(e)  if Borrower has made any untrue statement or misrepresentation in the credit application or any other certificate or document given or made for this loan; or
(f)  upon the death of Borrower or any one of them, if there is more than one; or
(g)  if Borrower provides Lender with false information or forged signatures at any time; or
(h)  if a court with proper jurisdiction to do so finds that Borrower, or any one of them, is incompetent; or
(i)  if Lender in good faith believes that the prospect of Borrower's paying this Note is impaired.
If Borrower is in default, the entire outstanding balance on this Note shall be immediately due, at the option of the Lender. This will happen without any prior notice to Borrower, or right to cure, except as may be required by law.
Borrower will also be in default:
(j)  if Borrower becomes insolvent and/or cannot pay Borrower's debts as they become due; or
(k)  if any other creditor tries by legal process to take any money or property of Borrower in the Lender's possession; or
(l)  if Borrower files a bankruptcy petition or if anyone files an involuntary bankruptcy against Borrower; or
(m)  if Borrower makes an assignment for the benefit of creditors, or any insolvency, reorganization, arrangement, debt adjustment, receivership, trusteeship, liquidation or other legal or equitable proceedings are instituted by or against Borrower; or
(n)  if any judgment, tax lien, municipal charge or tax levy is filed or writ of execution is issued against Borrower.
If any event described in (j), (k), (l), (m) or (n) happens, the entire outstanding balance on this Note shall be immediately due without any prior notice to Borrower, or right to cure, except as may be required by law.
A default by Borrower on this Note is a default on every other note, loan or agreement of Borrower with Lender.

**16. General Waiver Provisions.** Borrower waives presentment for payment, demand, protest, notice of protest, dishonor and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower further waives any right to require due diligence in collection by Lender.

**17. Delay in Enforcement.** Lender can delay enforcing any rights under this Note without losing any rights. Lender's failure to enforce any right under this Note shall not act as a waiver of that right or preclude the exercise of that right in the event of a future occurrence of the same event. Lender can also extend the time allowed for making payments, and such extension shall not affect the obligations of any Borrower, whether or not that Borrower is given notice of the extension.

**18. Release of Some Borrowers or Some Security.** If there is more than one Borrower, each agrees to remain bound by this Note, although Lender may release any other Borrower or release or substitute any property which is security for the repayment of this Note. Borrower waives all defenses based on suretyship and impairment of collateral or security.

Direct Installment Loan Disclosure and Note

**PNC BANK**

Borrower: FRED W CREDILLE
MARTHA JANE CREDILLE

Lender: PNC Bank, Delaware

Date: 11/08/2006

---

### Direct Installment Loan Note — continued

**19. Security Interest Charges.** Borrower agrees to pay any recording, filing, satisfaction and encumbrance fees which may be charged. The charges are to repay Lender for the fees paid to public officials to protect, continue, or release any security interest given in the security agreement or mortgage.

**20. Prepayment.** Borrower may prepay, in full or in part, the amount owed on this Note at any time. On some loans, Borrower will have to pay a Prepayment Fee if Borrower prepays the loan in full; see the section of this Note called "Prepayment Fee". If Borrower prepays the loan in part, Lender, at Lender's option, may notify Borrower that Borrower must, and Borrower agrees that Borrower will, continue to make regularly scheduled payments until all amounts due under this Note are paid; this will cause the Maturity Date to occur sooner than it was originally scheduled to occur. If applicable, Borrower agrees to pay the Prepayment Fee with the final payment of principal and interest on the new Maturity Date.

If at any time there is a remaining balance due of $50.00 or less, Borrower agrees that Borrower will pay the remaining balance due plus, if applicable, the Prepayment Fee, on the next scheduled payment due date.

**21. If Lender Obtains a Security Interest to Secure Borrower's Payment of this Note, Borrower Makes the Following Additional Promises to Lender:**
(a) if property insurance is required by a mortgage and/or security agreement securing the repayment of this Note and/or if flood insurance is required by federal law, BORROWER MAY OBTAIN THE INSURANCE FROM ANYONE OF BORROWER'S CHOICE subject to Lender's reasonable approval. If flood insurance is required, Borrower has been separately notified. The property insurance must cover loss of or damage to the collateral and must be in an amount sufficient to protect Lender's interests; flood insurance must be of the type and in the amount required by federal law;
(b) Borrower agrees to provide Lender evidence of required insurance. All policies must name Lender as a loss payee/secured party and must provide for at least 10 days written notice to Lender of reduction in coverage or cancellation;
(c) if Borrower fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Lender, Lender may notify Borrower that Borrower should purchase the required insurance at Borrower's expense. If Borrower fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Lender, Lender may purchase insurance to protect Lender's interest, to the extent permitted by applicable law, and charge Borrower the cost of the premiums and any other amounts Lender incurs in purchasing the insurance. THE INSURANCE LENDER PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE BORROWER COULD PURCHASE OTHERWISE. Upon demand, Borrower promises to pay Lender the cost of insurance purchased and other amounts incurred by Lender. Borrower agrees that Lender may, if permitted by applicable law, add the cost of the insurance to the amounts on which interest is charged at the rate provided in this Note. Lender may receive reasonable compensation for the services which Lender provides in obtaining any required insurance on Borrower's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222;
(d) to pay all taxes due on the collateral. If Borrower does not pay the taxes, Lender has the option to pay the taxes. Upon demand, Borrower promises promptly to repay to Lender all amounts paid by Lender for taxes;
(e) if Lender gets a security interest in stock or securities, the value of the collateral may become insufficient to protect Lender. If that happens, Borrower agrees to deliver to Lender additional collateral which Lender believes will be enough to protect Lender;
(f) to allow Lender the right to inspect the collateral at any reasonable time, and to maintain the collateral in good condition and repair; reasonable wear and tear excepted;
(g) if amounts are advanced by Lender under this Note for taxes and/or insurance, Lender may, at its option, if permitted by applicable law, add the amounts so advanced to the outstanding balance and require repayment with interest by increasing the installment payments so that the outstanding principal balance is repaid in full in substantially equal installments on the due date stated in the payment schedule; and
(h) Borrower's promises made and Lender's rights set forth in this section shall not merge with any judgment in any legal action and shall apply until all amounts owed are paid in full.

**22. Lender May Sign Borrower's Name to Insurance Checks.** Borrower gives Lender the right to sign Borrower's name on any check or draft from an insurance company. This is limited to a check or draft in payment of returned premiums or benefits under credit life insurance or credit disability insurance, insurance covering property which is security for this loan or flood insurance. This means that Borrower appoints Lender as attorney-in-fact for Borrower with the full power to endorse checks or drafts.

**23. Costs of Collection.** If Borrower is in default under this Note and Lender files suit, or takes other action to collect this loan or protect any collateral, Borrower agrees to pay costs of suit and, if permitted by law, reasonable attorneys' fees and expenses.

**24. Security Interest in Deposits.** The Lender may set-off any amounts due and unpaid under this loan against any of Borrower's money on deposit with Lender. This includes any money which is now or may in the future be deposited with Lender by Borrower or with any co-depositor, including Borrower's spouse. This also includes any property, credits, securities, or money of the Borrower, which may at any time be delivered to or in the possession of the Lender. This may be done without any prior notice to Borrower.

**25. Assignment.** Borrower may not assign or otherwise transfer his rights under this Note to anyone else. Lender may sell, transfer, or assign this Note, and any security agreement and/or mortgage given to secure this Note, and Borrower's rights and obligations under this Note will continue unchanged.

**26. Credit Insurance.** If Borrower has elected to purchase credit insurance, Borrower may cancel that insurance at any time without penalty. In the event of cancellation, the payment amounts shown in the "Payment Schedule" will not decrease; rather, the loan will be paid off more quickly since more of the payment will be directed to payment of the principal balance of the loan.

**27. Multiple Parties.** If there is more than one Borrower, each agrees to be responsible to Lender, individually and together, for payment in full of this loan. Borrowers agree that payment of all or part of the proceeds of this Note to any Borrower or to anyone else at the direction of any Borrower will be the equivalent of payment to each Borrower and for the benefit of all Borrowers.

**28. Heirs and Personal Representatives Bound.** The provisions of this Note shall be binding upon the Borrower, and the heirs and personal representatives of the Borrower.

**29. Governing Law.** This Note and its validity, construction and enforceability shall be governed by the laws of Delaware, except to the extent that such laws have been preempted or superseded by federal law.

**30. Communication Concerning Disputed Debts.** ALL COMMUNICATIONS BY BORROWER TO LENDER CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE LOAN, SHOULD BE SENT TO CENTRALIZED CUSTOMER ASSISTANCE, 2730 LIBERTY AVENUE, PITTSBURGH, PA 15222.

**31. Credit Reports.** BORROWER AUTHORIZES LENDER TO OBTAIN CREDIT REPORTS ON BORROWER FROM TIME TO TIME AT LENDER'S DISCRETION WHILE BORROWER HAS A LOAN OUTSTANDING WITH LENDER.

**32. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS NOTE AND DISCLOSURE. BY SIGNING BELOW, BORROWER AGREES TO BE LEGALLY BOUND BY ALL THE TERMS AND CONDITIONS OF THIS NOTE.** Each of the Borrowers guarantees that the signature of any Borrower is genuine.

_Fred W Credille_ ___ 11-8-06
Borrower's Signature  FRED W CREDILLE    Date

_Martha Jane Credille_ ___ 11/08/06
Borrower's Signature  MARTHA JANE CREDILLE    Date

**33. CO-MAKERS SEE NOTICE TO CO-SIGNER BELOW.** Any Borrower who is designated as a Co-Maker agrees to be equally responsible with all other Borrowers for the payment of this loan and performance of all promises in this Note.

_____
Co-Maker's Signature    Date

_____
Co-Maker's Signature    Date

---

### NOTICE TO CO-SIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

Pay to the order of
Citimortgage, Inc.
without recourse and us Citibank, N.A.
successor in interest by merger to:
Citicorp Trust Bank, FSB

Frank Morris Vice President
Citibank, N.A.

This note is hereby assigned
without recourse to
CITICORP TRUST BANK, fsb
PNC Bank, N.A.

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER:  FRED W CREDILLE, MARTHA JANE  CREDILLE

NOTE DATE: 11/8/2006

ORIGINAL PRINCIPAL BALANCE:  $145,000.00

PAY TO THE ORDER OF:  BAYVIEW LOAN SERVICING, LLC

WITHOUT RECOURSE

CitiMortgage, Inc.

By Bayview Loan Servicing, LLC, its Attorney in Fact

BY:

NAME: David Briggs
TITLE: First Vice President

PAY TO THE ORDER OF:

WITHOUT RECOURSE

BAYVIEW LOAN SERVICING, LLC

BY:

NAME: David Briggs
TITLE: First Vice President

BV#    ███████

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: FRED CREDILLE

ORIGINAL PRINCIPAL BALANCE: $145,000.00

ORIGINAL NOTE DATE: 11/14/2006

PROPERTY ADDRESS: 2107 EUCLID AVE BOOTHWYN PA 19061


PAY TO THE ORDER OF:
**Bayview Dispositions IIIa, LLC**


WITHOUT RECOURSE
**BAYVIEW LOAN SERVICING, LLC**


BY: _____

NAME: Jeromy Brantner

TITLE:  Vice-President

CREDILLE, FRED
MLIC

BV#    ██████████

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: FRED CREDILLE

ORIGINAL PRINCIPAL BALANCE: $145,000.00

ORIGINAL NOTE DATE: 11/14/2006

PROPERTY ADDRESS: 2107 EUCLID AVE BOOTHWYN PA 19061

PAY TO THE ORDER OF:
**METROPOLITAN LIFE INSURANCE COMPANY**

WITHOUT RECOURSE
**Bayview Dispositions IIIa, LLC**

BY: _____

NAME: Jeromy Brantner

TITLE: Vice-President

CREDILLE, FRED
MLIC

RCD FEE: $62.00

**Prepared by:**

PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

**Return to:**  PNC Bank - Consumer Loan Center
Mortgage Servicing
Mailstop P5-PCLC-01-I
2730 Liberty Avenue
Pittsburgh, PA 15222
Telephone 412-762-6728

UPI #

# Mortgage
(Closed-End) (For Pennsylvania Property)

**⊘ PNC BANK**

THIS MORTGAGE is made on **11/08/2006.**

The Mortgagor is **FRED W CREDILLE AND MARTHA JANE CREDILLE.**

If there is more than one, the word "Mortgagor" herein refers to each and all of them.

The Mortgagee is **PNC Bank, Delaware.**

The word "Borrower" means **FRED W CREDILLE , MARTHA JANE CREDILLE .**

If there is more than one, the word "Borrower" herein refers to each and all of them.

Borrower owes Mortgagee the sum of **One Hundred Forty-five Thousand Dollars And Zero Cents**

(U.S. $    **145,000.00**    ).

This debt is evidenced by Borrower's written obligation (referred to herein as the "Note"), dated  **11/08/2006** .

This Mortgage secures to Mortgagee: (a) the repayment of the debt evidenced by the Note, with interest and other charges as provided therein; (b) the payment of all other sums, with interest thereon, advanced hereunder for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred to protect the security of this Mortgage; (c) the payment of all of Mortgagee's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; (d) payment of any refinancing, substitution, extension, modification, and/or renewal of any of said indebtedness, interest, charges, costs and expenses; (e) the performance of Mortgagor's and/or Borrower's covenants and agreements under this Mortgage and the Note; and (f) the repayment of the debt evidenced by any note or agreement which was refinanced by the Note, to the extent that such debt is owed to Mortgagee and has not been paid. For this purpose, Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described property, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at and known as:

| | | | |
|---|---|---|---|
| **2107 EUCLID AVE** | BOOTHWYN | PA   19061-3316 | DELAWARE |
| **Recording Date** | **01/11/1966** | | |
| **Deed Book Number** | **2230** | **Page Number** | **239** |
| **Tax Parcel Number** | | | |

The word "Property" herein shall mean all of the foregoing mortgaged property.

To have and to hold the Property unto the Mortgagee, its successors and assigns, forever. Provided, however, that if Mortgagor and/or Borrower shall pay to Mortgagee the said debt, interest, and all other sums and perform all covenants and agreements secured hereby, then this Mortgage and the estate conveyed by it shall terminate and become void.

**Warranty of Title.** Mortgagor warrants and represents to Mortgagee that: (a) Mortgagor is the sole owner of the Property, and has the right to mortgage and convey the Property; (b) the Property is unencumbered except for encumbrances now recorded; and (c) Mortgagor will defend the title to the Property against all claims and demands except encumbrances now recorded.

Page _1_ of _3_

## EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Township of Upper Chichester, County of Delaware and State of Pennsylvania, bounded and described according to a conveyance Plan of Boothwyn Acres, for Boothwyn Development Corporation, made by Damon and Foster, Civil Engineers, Sharon Hill, Pennsylvania, on May 23, 1957, as follows:

BEGINNING at a point on the Southeasterly side of Euclid Avenue (Fifty feet wide) which point is at the distance of One hundred five feet measured North Fifty-six degrees, Twenty-three minutes, Fifty seconds East along the same from its intersection with the Northeasterly side of Broomall Street (Fifty feet wide) (both lines produced); extending thence from said beginning point and along the said Southeasterly side of Euclid Avenue, the Two following courses and distances: (1) North Fifty-six degrees, Twenty-three minutes, Fifty seconds East Forty-five feet to a point of curve; and (2) on a line curving to the left, having a radius of Two hundred feet, the arc distance of Twenty-five feet and two one-hundredths of a foot to a point; thence extending South Forty degrees, Forty-six minutes, Ten seconds East One Hundred Fifty feet to a point; thence extending Southwestwardly on a line curving to the right, having a radius of Three hundred fifty feet, the arc distance of Forty-three feet and thirty-five one-hundredths of a foot to a point; thence extending South Seventy degrees, Fifty minutes, Twenty seconds West Forty-six feet and ninety-one one-hundredths of a foot to a point; thence extending North Thirty-three degrees, Thirty-minutes, Ten seconds West One Hundred thirty-eight feet and thirty one-hundredths of a foot to the first mentioned point and place of beginning.

DBV 2230 PAGE 239

**Covenants.** Mortgagor promises and agrees as follows:

1. Mortgagor will maintain the Property in good order and repair.
2. Mortgagor will comply with all laws respecting the ownership and/or use of the Property.
3. If the Property is part of a condominium or planned unit development, Mortgagor will comply with all by-laws, regulations and restrictions of record.
4. Mortgagor will pay and/or perform all obligations under any mortgage, lien, or security agreement which has priority over this Mortgage.
5. Mortgagor will pay or cause to be paid all taxes and other charges assessed or levied on the Property when due and, upon Mortgagee's request, will deliver to the Mortgagee receipts showing the payment of such charges.
6. While any part of the debts secured by this Mortgage remain unpaid, Mortgagor promises to obtain and keep in force property insurance and, if required by federal law, flood insurance on the Property. The property insurance must cover loss of or damage to the Property and must be in an amount sufficient to protect Mortgagee's interests; flood insurance must be of the type and in the amount required by federal law. Mortgagor agrees to provide Mortgagee evidence of required insurance. All policies must name Mortgagee as a loss payee/secured party and must provide for at least 10 days written notice to Mortgagee of reduction in coverage or cancellation. Mortgagor gives Mortgagee the right and power to sign Mortgagor's name on any check or draft from an insurance company and to apply the money to any debt secured by this Mortgage. This is limited to checks and drafts in payment of a claim under an insurance policy for loss or damage to the Property or for returned or rebated premiums on policies insuring the Property. Mortgagor does not have the right to, and agrees that Mortgagor will not, revoke the power of Mortgagee to make Mortgagor's endorsement. Mortgagee may exercise the power for Mortgagee's benefit and not for Mortgagor's benefit, except as otherwise provided by law.
7. If Mortgagor fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may notify Mortgagor that Mortgagor should purchase the required insurance at Mortgagor's expense. If Mortgagor fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may purchase insurance to protect Mortgagee's interest, to the extent permitted by applicable law, and charge Mortgagor the cost of the premiums and any other amounts Mortgagee incurs in purchasing the insurance. THE INSURANCE MORTGAGEE PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE MORTGAGOR COULD PURCHASE OTHERWISE. Mortgagee may receive reasonable compensation for the services which Mortgagee provides in obtaining any required insurance on Mortgagor's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Mortgagee. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If Mortgagor fails to perform any other duty or obligation required by these Covenants, Mortgagee may, at its sole option, advance such sums as it deems necessary to protect the Property under its rights in the Property under this Mortgage. Mortgagor agrees to repay Mortgagee any amounts advanced in accordance with this paragraph, with interest thereon, upon demand.
8. Any interest payable to Mortgagee after a judgment is entered or on additional sums advanced shall be at the rate provided for in the Note.
9. Mortgagee may make reasonable entries upon and inspections of the Property after giving Mortgagor prior notice of any such inspection.
10. Mortgagor will not sell, transfer ownership in, or enter into an installment sale contract for the sale of all or any part of the Property.
11. The promises, agreements and rights in this Mortgage shall be binding upon and benefit anyone to whom the Property or this Mortgage is transferred. If more than one Mortgagor signs the Mortgage, each and all of them are bound individually and together. The covenants made in this section and Mortgagor's remedies set forth below shall not merge with any judgment entered in any legal action and shall apply until all amounts owed are paid in full.

**Default.** Mortgagor will be in default under this Mortgage: (a) if there is a default under the Note; (b) if Mortgagor breaks any promise made in the Mortgage; (c) if any Mortgagor dies; (d) if any other creditor tries to take the Property by legal process; (e) if any Mortgagor files bankruptcy or if anyone files an involuntary bankruptcy against any Mortgagor; (f) if any tax lien or levy is filed or made against any Mortgagor or the Property; (g) if any Mortgagor has made any false statement in this Mortgage; or (h) if the Property is destroyed, or seized or condemned by federal, state or local government.

**Mortgagee's Remedies.** Unless prohibited by law, if Mortgagor is in default under this Mortgage, Mortgagee may, at its option, after any notice required by law, declare due and payable the entire unpaid balance of the sums which are secured by this Mortgage and owing upon the Note. If Mortgagee so declares such entire balance due and payable, Mortgagee may take possession of the Property, collect any and all rents, apply said rents to the indebtedness secured by this Mortgage, foreclose the Mortgage, or take other action upon the Mortgage as permitted or provided by law to collect the balance owing. If a mortgage foreclosure action or any other action on this Mortgage is filed by Mortgagee, and/or if Mortgagee takes any action to protect or enforce its interest in any court, including Bankruptcy Court, Mortgagor agrees to pay to Mortgagee all expenses and costs of such action, including, if permitted by law, reasonable attorneys' fees to the maximum extent permitted by law.

**Remedies Cumulative.** If any circumstance exists which would permit Mortgagee to accelerate the balance, Mortgagee may take such action at any time during which such circumstance continues to exist. Mortgagee's remedies under this Mortgage shall be cumulative and not alternative.



Page 2 of 3

**Delay in Enforcement.** Mortgagee can delay in enforcing any of its rights under this Mortgage or the Note without losing that right. Any waiver by Mortgagee of any provision of this Mortgage or the Note will not be a waiver of the same or any other provision on any other occasion.

**Assignment.** Mortgagee may sell, transfer or assign this Mortgage without Mortgagor's consent.

**Severability.** If any provision of this Mortgage is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Mortgage.

**IN WITNESS WHEREOF,** the Mortgagor has hereunto set his hand and seal, or has adopted as his seal the word "(SEAL)" the day above written, with the intent that this document be executed and delivered as a sealed instrument.

SEALED AND DELIVERED IN THE PRESENCE OF:

_____        _____ (SEAL)
                                                                      Mortgagor's Signature

KAREN C QUINTANA                          FRED W CREDILLE
Type or Print Witness' Name               Type or Print Mortgagor's Name

_____        _____ (SEAL)
                                                                      Mortgagor's Signature

KAREN C QUINTANA                          MARTHA JANE CREDILLE
Type or Print Witness' Name               Type or Print Mortgagor's Name

### Acknowledgment

STATE OF Delaware }
                 } SS:
COUNTY OF New Castle }

BE IT REMEMBERED, that on this 8th day of November, 2006, before me, a Notary Public in and for the State/Commonwealth of Delaware, personally appeared Fred W. and Martha Jane Credille who I am satisfied is/are the person(s) named in and who executed the within Mortgage, and who acknowledged that he/she/they executed the same as a voluntary act for the uses and purposes expressed in the Mortgage and desired the same to be recorded.

In Witness Whereof, I set my hand and official seal.

Signature of Notary Public: _____

Print or Type Name of Notarial Officer: Heddi L Mitchell

Title: Branch Manager

My Commission Expires: 4/30/07

Certificate of Residence: I, Lucille Jontao do hereby certify that Mortgagee's precise residence is Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222.

_____
Agent for Mortgagee

Page 3 of 3

BK03954-1278

AS-ASSIGNMENTS

2006104799    11/13/2006 01:48:36 PM:2
RCD FEE: $46.00

DELAWARE
COUNTY

JUDGE SR. ROD

PREPARED BY:
PNC Bank, NA
2730 Liberty Ave
Pittsburgh, PA 15222
412-768-6398
Return To:
PNC Bank, NA
UPI#

# ASSIGNMENT OF MORTGAGE

**THIS ASSIGNMENT OF MORTGAGE IS MADE AS OF THE** 8 day of November
, 2006 between PNC BANK, National Association, 2730 Liberty Ave. Pittsburgh, PA 15222
("Assignor") and CITICORP TRUST BANK,fsb, 311 New Rodgers Rd. Suite C, Levittown PA
19056 ("Assignee").

Assignor is the mortgagee under a certain mortgage given and executed by Fred W
Credille and Martha Jane Credille to PNC BANK, National Association, dated the 8 day of
November, 2006, recorded in Book _____, No. 3954, Page 1274, etc. (the
"Mortgage"), given to secure the payment of a note of even date thereof in the principal amount
of $145,000.00 dollars with interest, etc. (the "Note"), and secured upon all that certain real
property located at  2107 Euclid Ave  Boothwyn  PA  19061-3316

Assignor now desires to transfer all of its rights under the Mortgage to Assignee.

**NOW THEREFORE,** for good and valuable consideration paid by Assignee to Assignor
at the time of the execution hereof, the receipt and sufficiency of which is hereby acknowledged,
Assignor does hereby grant, bargain, sell, assign, transfer and set over unto Assignee, his heirs,
executors, administrators and assigns all rights of Assignor under the Note and the Mortgage, and
all moneys, principal and interest due thereon, together with all rights, remedies and incidents
thereunto belonging, and all Assignor's right, title, interest, property, claim and demand in and to
the same.

**TO HAVE,** hold, receive and take all and singular the hereditaments and premises hereby
granted and assigned, or mentioned and intended so to be, with the appurtenances, unto the said
Assignee, his heirs, executors, administrators and assigns, to and for his and their only proper use
and benefit forever.

**EXHIBIT A**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Township of Upper Chichester, County of Delaware and State of Pennsylvania, bounded and described according to a conveyance Plan of Boothwyn Acres, for Boothwyn Development Corporation, made by Damon and Foster, Civil Engineers, Sharon Hill, Pennsylvania, on May 23, 1957, as follows:

BEGINNING at a point on the Southeasterly side of Euclid Avenue (Fifty feet wide) which point is at the distance of One hundred five feet measured North Fifty-six degrees, Twenty-three minutes, Fifty seconds East along the same from its intersection with the Northeasterly side of Broomall Street (Fifty feet wide) (both lines produced); extending thence from said beginning point and along the said Southeasterly side of Euclid Avenue, the Two following courses and distances: (1) North Fifty-six degrees, Twenty-three minutes, Fifty seconds East Forty-five feet to a point of curve; and (2) on a line curving to the left, having a radius of Two hundred feet, the arc distance of Twenty-five feet and two one-hundredths of a foot to a point; thence extending South Forty degrees, Forty-six minutes, Ten seconds East One Hundred Fifty feet to a point; thence extending Southwestwardly on a line curving to the right, having a radius of Three hundred fifty feet, the arc distance of Forty-three feet and thirty-five one-hundredths of a foot to a point; thence extending South Seventy degrees, Fifty minutes, Twenty seconds West Forty-six feet and ninety-one one-hundredths of a foot to a point; thence extending North Thirty-three degrees, Thirty-minutes, Ten seconds West One Hundred thirty-eight feet and thirty one-hundredths of a foot to the first mentioned point and place of beginning.

PARCEL # ████████████
DBV 2230 PAGE 239

**IN WITNESS WHEREOF,** Assignor has signed this Assignment as of the day and date first written above.

WITNESS:                                   PNC BANK, NA

_____           By: _____(Seal)
«Witness1»
                                           PATRICIA H YEE
                                           FINANCIAL SERVICES OFFICER

*It is hereby certified that the address of the assignee within named is:*

*CITICORP TRUST BANK, fsb*
*311 New Rodgers Rd*
*Suite C*
*Levittown  PA 19056*

Certificate of Residence
I, *Lucille Jontuo*, do hereby certify that the assignee's precise residence is: 311 New Rodgers Rd Suite C Levittown PA 19056

```
Agent for Assignee
```

COMMONWEALTH OF PENNSYLVANIA          )
County of Allegheny                   ) SS

On _November 8, 2006_____, before me, the undersigned notary public in and for this state and county, personally appeared Patricia H Yee who is acknowledged to be the Financial Services Officer of PNC BANK, National Association, and stated that as such officer being authorized to do, and executed the foregoing instrument for the purpose therein contained, for and on behalf of the corporation.

In witness where of, I have set my hand and official seal.

_____ (Seal)
Notary Public in and for the Commonwealth
Of  Pennsylvania

```
COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Jennifer C. Alexander, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Mar. 7, 2009
Member, Pennsylvania Association of Notaries
```

From: CITIBANK N.A, SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB
To: BAYVIEW LOAN SERVICING, LLC

RD BK05366-1564    AS-ASSIGNMENTS

2013048833    07/16/2013 11:03:07 AM:1

RCD FEE: $66.50

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CITIBANK N.A, SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB 4050 REGENT BLVD, MS N2A-222, IRVING, TX 75063 (Assignor)** by these presents does assign, and set over, without recourse, to **BAYVIEW LOAN SERVICING, LLC 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **FRED W CREDILLE AND MARTHA JANE CREDILLE** to PNC BANK, DELAWARE. Said mortgage **Dated: 11/8/2006 is recorded in the State of PA, County of Delaware on 11/13/2006, as Book 03954 Page 1274 AMOUNT: $ 145,000.00** Parcel # ▓▓▓▓▓▓ TOWNSHIP OF UPPER CHICHESTER Property Address: 2107 EUCLID AVE, BOOTHWYN, PA 19061-3316

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: _June 13, 2013_
CITIBANK N.A. SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB

By: _[signature]_

Traci A. Hoffman, Vice President

PA Delaware

The Assignee hereby certifies that the precise address of the within named **BAYVIEW LOAN SERVICING, LLC is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146.**

_[signature]_

From:  CITIBANK N.A, SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB
To:  BAYVIEW LOAN SERVICING, LLC

RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092                    **Assignment of Mortgage**              Send Any Notices To Assignee.

State of _MD_ , County of _Washington_
On _6/13/13_ , before me, the undersigned, personally appeared Traci A. Hoffman, who acknowledged that he/she is Vice President of/for  CITIBANK N.A, SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CITIBANK N.A, SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB .

Notary public, _Janet F Miller_
My commission expires: _12-7-16_

JANET F. MILLER
Frederick County
State of Maryland
My Commission Expires Dec. 7, 2016

PA   Delaware

The Assignee hereby certifies that the precise address of the within named BAYVIEW LOAN SERVICING, LLC  is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, FL 33146.

RD BK06148-1230

2018015549    04/04/2018 02:39:42 PM:1

RCD FEE: $83.25

**AS-ASSIGNMENTS**

**When Recorded Return To:**
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
KIMBERLING CITY, MO 65686

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

UPI #:

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #:          TS Ref #:                    Client Ref #:
PA/DELAWARE

Assignment Prepared on: March 12, 2018

**ASSIGNOR: BAYVIEW LOAN SERVICING, LLC,** at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL
GABLES, FL, 33146

**ASSIGNEE: BAYVIEW DISPOSITIONS IIIA, LLC,** at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL
GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named
Assignee interest under that certain Mortgage Dated: 11/8/2006, in the amount of $145,000.00, executed by FRED
W CREDILLE AND MARTHA JANE CREDILLE to PNC BANK, DELAWARE and Recorded: 11/13/2006, Instrument
#: 2006104798, Book: 03954, Page: 1274 in DELAWARE County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 4425 PONCE DE LEON BLVD., 5TH
FLOOR, CORAL GABLES, FL, 33146

Attested By: _____ **Isabel Molina**

The property is located in the Township of UPPER CHICHESTER.
Property Address: 2107 EUCLID AVE, BOOTHWYN, PA, 19061-3316

Document References:
- Assignment Dated: 6/13/2013 from CITIBANK N.A., SUCCESSOR IN INTEREST BY MERGER TO CITICORP
TRUST BANK, FSB to BAYVIEW LOAN SERVICING, LLC Recorded: 7/16/2013, Instrument #: 2013048833, Book:
05366, Page: 1564

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the above-described Mortgage.
BAYVIEW LOAN SERVICING, LLC

On:    **MAR 1 5 2018**

Signature: _____
Name:    ESLOAN SOTOLONGO
Title:    ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On    **MAR 1 5 2018**        , before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the
State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW
LOAN SERVICING, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / #:

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission #
My Commission Expires
August 25, 2020

PA/DELAWARE

**EXHIBIT A**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Township of Upper Chichester, County of Delaware and State of Pennsylvania, bounded and described according to a conveyance Plan of Boothwyn Acres, for Boothwyn Development Corporation, made by Damon and Foster, Civil Engineers, Sharon Hill, Pennsylvania, on May 23, 1957, as follows:

BEGINNING at a point on the Southeasterly side of Euclid Avenue (Fifty feet wide) which point is at the distance of One hundred five feet measured North Fifty-six degrees, Twenty-three minutes, Fifty seconds East along the same from its intersection with the Northeasterly side of Broomall Street (Fifty feet wide) (both lines produced); extending thence from said beginning point and along the said Southeasterly side of Euclid Avenue, the Two following courses and distances: (1) North Fifty-six degrees, Twenty-three minutes, Fifty seconds East Forty-five feet to a point of curve; and (2) on a line curving to the left, having a radius of Two hundred feet, the arc distance of Twenty-five feet and two one-hundredths of a foot to a point; thence extending South Forty degrees, Forty-six minutes, Ten seconds East One Hundred Fifty feet to a point; thence extending Southwestwardly on a line curving to the right, having a radius of Three hundred fifty feet, the arc distance of Forty-three feet and thirty-five one-hundredths of a foot to a point; thence extending South Seventy degrees, Fifty minutes, Twenty seconds West Forty-six feet and ninety-one one-hundredths of a foot to a point; thence extending North Thirty-three degrees, Thirty-minutes, Ten seconds West One Hundred thirty-eight feet and thirty one-hundredths of a foot to the first mentioned point and place of beginning.

PARCEL ██████████
DBV 2230 PAGE 239

AS-ASSIGNMENTS

**When Recorded Return To:**
RICHMOND MONROE GROUP, INC.
P.O. BOX 458
KIMBERLING CITY, MO 65686

RD BK06148-1231
2018015550   04/04/2018 02:39:42 PM:2
RCD FEE: $83.25

DELAWARE
COUNTY

UPI #: ▮▮▮▮▮▮▮

## CORPORATE ASSIGNMENT OF MORTGAGE

Loan #▮▮▮▮▮▮▮▮▮▮▮▮▮
PA/DELAWARE

Assignment Prepared on: March 12, 2018

**ASSIGNOR: BAYVIEW DISPOSITIONS IIIA, LLC**, at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE: METROPOLITAN LIFE INSURANCE COMPANY**, at C/O BAYVIEW LOAN SERVICING, 4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 11/8/2006, in the amount of $145,000.00, executed by FRED W CREDILLE AND MARTHA JANE CREDILLE to PNC BANK, DELAWARE and Recorded: 11/13/2006, Instrument #: 2006104798, Book: 03954, Page: 1274 in DELAWARE County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O BAYVIEW LOAN SERVICING, 4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL, 33146

Attested By:_____ **Isabel Molina**

The property is located in the Township of UPPER CHICHESTER.
Property Address: 2107 EUCLID AVE, BOOTHWYN, PA, 19061-3316

Document References:
- Assignment Dated: 6/13/2013 from CITIBANK N.A., SUCCESSOR IN INTEREST BY MERGER TO CITICORP TRUST BANK, FSB to BAYVIEW LOAN SERVICING, LLC Recorded: 7/16/2013, Instrument #: 2013048833, Book: 05366, Page: 1564
- Assignment Dated: **3-15-2018** from BAYVIEW LOAN SERVICING, LLC to BAYVIEW DISPOSITIONS IIIA, LLC To Be Recorded Concurrently.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
BAYVIEW DISPOSITIONS IIIA, LLC

On: _____ **MAR 1 5 2018** _____

Signature:_____

Name:     ESLOAN SOTOLONGO
Title:     ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On _____ **MAR 1 5 2018** _____, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IIIA, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A Portal
Notary Expires 8/25/2020 / #: ▮▮▮▮▮▮▮

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission #▮▮▮▮▮
My Commission Expires
August 25, 2020

PA/DELAWARE

## EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, SITUATE in the Township of Upper Chichester, County of Delaware and State of Pennsylvania, bounded and described according to a conveyance Plan of Boothwyn Acres, for Boothwyn Development Corporation, made by Damon and Foster, Civil Engineers, Sharon Hill, Pennsylvania, on May 23, 1957, as follows:

BEGINNING at a point on the Southeasterly side of Euclid Avenue (Fifty feet wide) which point is at the distance of One hundred five feet measured North Fifty-six degrees, Twenty-three minutes, Fifty seconds East along the same from its intersection with the Northeasterly side of Broomall Street (Fifty feet wide) (both lines produced); extending thence from said beginning point and along the said Southeasterly side of Euclid Avenue, the Two following courses and distances: (1) North Fifty-six degrees, Twenty-three minutes, Fifty seconds East Forty-five feet to a point of curve; and (2) on a line curving to the left, having a radius of Two hundred feet, the arc distance of Twenty-five feet and two one-hundredths of a foot to a point; thence extending South Forty degrees, Forty-six minutes, Ten seconds East One Hundred Fifty feet to a point; thence extending Southwestwardly on a line curving to the right, having a radius of Three hundred fifty feet, the arc distance of Forty-three feet and thirty-five one-hundredths of a foot to a point; thence extending South Seventy degrees, Fifty minutes, Twenty seconds West Forty-six feet and ninety-one one-hundredths of a foot to a point; thence extending North Thirty-three degrees, Thirty-minutes, Ten seconds West One Hundred thirty-eight feet and thirty one-hundredths of a foot to the first mentioned point and place of beginning.

PARCEL ██████████
DBV 2230 PAGE 239

Oct. 22. 2013  1:36PM                                                                    P. 1

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

_____ [Space Above This Line For Recording Data] _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of October 21, 2013 (the "Effective Date"), by and between, Bayview Loan Servicing, LLC, ("Servicer") and FRED W CREDILLE and MARTHA J CREDILLE ("Borrower").

### RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 11/06/2008, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $145,000.00.

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 11/06/2008, in the original principal sum of $145,000.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer. Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Borrower hereby agrees that this Agreement may only become effective upon Borrower's completion of the Stipulation Agreement dated October 21, 2013. If Borrower successfully completes all the terms of said Stipulation, Servicer will execute this Agreement and adjust the Loan accordingly. However, said execution is subject to Borrower's endorsing and clearing of any and all title issues to Servicer's satisfaction. All payments made pursuant to the Stipulation Agreement (with the exception of the down payment mentioned below) will be credited to payments due under this Agreement.

E. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

### AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

1. NOTE MODIFICATIONS:
   (a) Outstanding Debt:
   Borrower agrees that the unpaid principal balance due on the Note of $140,646.11 (including credit for Stipulation Agreement downpayment), shall be decreased by $5,225.43 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $135,420.68 ("New Balance"). Based on the consideration listed above, and other good and valuable consideration, Servicer agrees to defer and waive interest upon $1,921.55 ("Deferred Balance") of the New Balance until the loan matures on 11/01/2053 at which time the Deferred Balance shall be immediately due and payable as a balloon payment, as well as any outstanding amounts due under the terms of the mortgage. In the event that the Deferred Balance is not paid timely as agreed or in the event of a default under this agreement or the loan documents, interest shall accrue on the Deferred Balance at the rate in effect on the loan immediately prior to maturity or the time of default, and will adjust thereafter according to the terms of the Note. Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in this Note, unless modified by this Agreement.

AM011 Deferred Stip to Mod Agreement  Letter Fixed (Step Rate) V 1.2 Loan No.: ▓▓▓          Page 1 of 4

Oct. 22. 2013  1:36PM

**(b) New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 11/01/2013 | $404.27 | $430.33 | $834.60 | 12/01/2013 | 60 |
| 6 | 3.000% | 11/01/2018 | $469.67 | Adjust Annually | Adjust Annually | 12/01/2018 | 12 |
| 7 | 4.000% | 11/01/2019 | $538.70 | Adjust Annually | Adjust Annually | 12/01/2019 | 12 |
| 8-40 | 4.230% | 11/01/2020 | $554.56 | Adjust Annually | Adjust Annually | 12/01/2020 | 396 |

Effective on 11/01/2020, Borrower's rate of interest will be 4.23% and will remain fixed for the remaining life of the loan.

**(c)  New Maturity Date:**
The maturity date will be 11/01/2053, on which date any unpaid interest and all other sums due shall be paid in full.

**2.   ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: in certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3.   RELEASE:**
Borrower releases Servicer, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code § 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**4.   AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property (or the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**5.   ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following:  In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer's agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

Oct. 22. 2013  1:36PM

**6.  CHANGE IN FINANCIAL STATUS:**

In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator; or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/ or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief. This provision is a material inducement for Servicer to enter into this Agreement.

**7.  NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

**8.  NO RELIANCE; CONSTRUCTION:**

Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprised themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**9.  NO ORAL MODIFICATION:**

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**10.  SUCCESSORS AND ASSIGNS:**

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**11.  ATTORNEY'S FEES, JURY TRIAL WAIVER:**

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

**12.  ADDITIONAL AGREEMENTS:**

I agree to the following:

(a) In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer's Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed-in-Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

(b) Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer's procedures in connection with such program(s).

10/22/2013  1:38PM (GMT-04:00)

Oct. 22. 2013  1:37PM

**13. PARTIAL INVALIDITY:**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED OR DELIVERED IN CONJUNCTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR SERVICER ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: _Fred W Credille_ Date: 10/22/13
FRED W CREDILLE

By: _Martha J. Credille_ Date: 10/23/13
MARTHA J CREDILLE

Servicer:

By: _____ Date: _____
Vice President, Bayview Loan Servicing, LLC

Asset Manager: Elizabeth Pena
Phone Number: (855) 625-4443 Monday - Friday 9:00 am to 6:00 pm ET
Fax Number:    (305) 631-5665

AM011 Deferred Step to Mod Agreement  Letter Fixed (Step Rate) V 1.2 Loan No.:██████     Page 4 of 4

10/22/2013  1:38PM (GMT-04:00)